UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **MARGARET WILLIAMS,**<br>3101 Laurel Bush Road<br>Abingdon, Maryland  21009<br><br>                 Plaintiff,<br><br>   v.<br><br>**MERCY MEDICAL CENTER,<br>INC.,**<br>345 Saint Paul Place<br>Baltimore, Maryland  21202<br><br>     <u>SERVE</u>:<br>     Linda Jones<br>     Suite 400<br>     218 North Charles Street<br>     Baltimore, MD  21201<br><br>     and<br><br>**MERCY MEDICAL CENTER<br>PLASTIC & RECONSTRUCTIVE<br>SURGERY CENTER**<br>227 St. Paul Place<br>Baltimore, Maryland 21202<br><br>     <u>SERVE</u>:<br>     Linda Jones<br>     Suite 400<br>     218 North Charles Street<br>     Baltimore, MD  21201<br><br>              Defendants. | **Civil No.**<br><br><br>**COMPLAINT<br>JURY TRIAL DEMANDED** |

The Plaintiff, Margaret Williams, by and through the undersigned counsel, files this complaint against Mercy Medical Center, Inc. and Mercy Medical Center Plastic & Reconstructive Surgery Center and alleges as follows:

## PRELIMINARY STATEMENT

1.     Margaret Williams ("Plaintiff"), an individual who is deaf, brings this complaint against Mercy Medical Center, Inc. and Mercy Medical Center Plastic & Reconstructive Surgery Center ("Defendants") alleging that Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by denying her repeated requests that Defendants provide qualified sign language interpreters and by denying her effective communication and a meaningful opportunity to participate in her own healthcare.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (i) Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this Complaint occurred within this District.

## PARTIES

4.      Margaret Williams resides at 3101 Laurel Bush Road, Abingdon, Maryland 21009.

5.      Mercy Medical Center, Inc. is a privately operated hospital located at 345 St. Paul Place, Baltimore, Maryland 21202 that is open to the public.

6.      Mercy Medical Center Plastic & Reconstructive Surgery is a medical center that specializes in reconstructive surgery located at 227 St. Paul Place, Baltimore, Maryland 21202 that is open to the public.

7.      Defendants are principally engaged in the business of providing health care.

8.      Defendants are recipients of federal financial assistance.

## FACTUAL ALLEGATIONS

9.      Margaret Williams is deaf.  She is substantially limited in the major life activities of hearing and speaking and is an individual with a disability.  She uses American Sign Language as her primary means of communication.

10.     In the Spring of 2014, Ms. Williams contacted Defendants for medical care and treatment. Ms. Williams called via telecommunications relay to schedule an appointment for a surgical consultation. Ms. Williams informed Defendants that she is deaf, and requested that Defendants provide a qualified sign language interpreter.

3

11.    Defendants scheduled an initial appointment at 227 St. Paul Place, Sixth Floor, Baltimore, MD 21202 for April 29, 2014 with Dr. Bernard Chang, and informed Ms. Williams that they would provide an interpreter.

12.    Ms. Williams reiterated her request for the needed sign language interpreter services when she arrived for her appointment on April 29, 2014. However, Defendants responded that they do not hire "live" interpreters.

13.    Over Ms. William's objection, Defendants produced a laptop and required Ms. Williams to communicate using a video relay interpreter.

14.    Video relay interpreting consists of placing a video call through a computer equipped with a video camera to an interpreter in a remote location.

15.    Ms. Williams' appointment involved sensitive, intimate and personal information. For example, she was disrobed with her breasts displayed. She was acutely uncomfortable with the transmission of live video while physically exposed and informed Defendants how she felt about the use of video relay interpreting. Furthermore, communication via video relay was not effective.

16.    Defendants gave Ms. Williams no alternative but to utilize the video relay interpreter.

17.    Dr. Bernard Chang examined Ms. Williams and concluded that she was a candidate for breast reduction to address medical needs and that breast reduction would reduce the pain and symptomology she was experiencing.

18.     When Defendants contacted Ms. Williams to inform her that breast reduction surgery had been scheduled for July 3, 2014 at Mercy Medical Center, Inc., Ms. Williams again informed Defendants that she needed a qualified sign language interpreter for surgery providing Defendants with approximately two months notice of her need for effective communication.

19.     Ms. Williams specifically informed Defendants that she did not want to use a video relay interpreter and that a video relay interpreter would not be effective or appropriate under the circumstances. Breast surgery and pre- and post-operative discussions relating to breast surgery involve a patient disrobing, breasts being exposed and examined, and marks being made on the breasts as part of critical discussions about the exact surgical results desired such that reliance on a remote interpreter via a video feed is particularly inappropriate, even if the technology were operating correctly.

20.     Defendants responded to Ms. William's need for communication access saying that they would not provide an in-person interpreter and instructed Ms. Williams to bring someone with her to interpret.

21.     Ms. Williams reiterated her need for an in-person interpreter and told Defendants that the Americans with Disabilities Act required Defendants to provide a qualified interpreter.

22.     Defendants indicated that they would "see what they could do."

23. When Ms. Williams arrived at Mercy Medical Center on the day of her surgery, she was anxious but eager to have the needed surgery. Her husband and her sister-in-law accompanied her. Ms. Williams' husband is deaf and her sister-in-law is hard of hearing. When Ms. Williams and her family asked Defendants where the interpreter was, Defendants informed Ms. Williams and her family that they had not made arrangements for an interpreter.

24. Ms. Williams waited with her family. Because she is deaf, she was not aware when Defendants called her back to prepare for surgery. Defendants were irritated, chastising Ms. Williams for not responding when they repeatedly called her name.

25. Defendants did not provide an in-person interpreter despite having received advance notice of the need for interpreters, despite Ms. Williams' multiple requests, and despite the obvious need for interpreters.

26. Defendants briefly connected video relay interpreting. Ms. Williams expressed discomfort with video of her breasts being streamed through video cameras to a male interpreter in a remote location. Additionally, the image was blurry such that communication was both embarrassing and ineffective.

27. Without an interpreter, Ms. Williams was not able to communicate effectively. She was very nervous about the surgical procedure and had questions for her medical providers. She also wanted to provide her medical history to the

Defendants and answer Defendants' questions fully and completely. Ms. Williams' sister-in-law repeatedly told Defendants that Ms. Williams needed an interpreter and that the Americans with Disabilities Act required Defendants to provide an interpreter.

28.     Because of the intimate nature of the surgical procedure involved, communication was of particular importance in making Ms. Williams feel safe and comfortable and in making decisions about the results desired from the surgery.

29.     An employee of Defendants eventually came to speak with Ms. Williams and her family and acknowledged that Defendants had failed to obtain interpreter services.

30.     Ms. Williams and her family yet again reiterated their need for sign language interpreter services.

31.     The employee indicated that they would attempt to obtain interpreter services but neither an in-person nor a video remote interpreter was provided.

32.     In the absence of interpreter services, Ms. Williams asked that her sister-in-law be brought into the recovery room so that she would have even some limited ability to communicate with those providing her medical care. While this would not have afforded effective communication, it would have reduced the terror of waking up from a surgical procedure with no ability to communicate with nurses

7

or doctors. The employee responded that no one would be permitted in the recovery room.

33. Despite Ms. Williams' many requests for interpreter services, and despite the employee's claims that they would attempt to locate an interpreter, Defendants failed to provide a qualified sign language interpreter. Ms. Williams woke up in recovery without any ability to communicate.

34. Ms. William was scared and in pain but Defendants provided no means for her to communicate.

35. Doctors approached Ms. Williams' family after her surgery to provide an update but neither Ms. Williams' husband nor sister-in-law could understand what was being said. Both told the doctors that they could not understand and both said again that an interpreter was needed.

36. Defendants failed to provide effective communication in regards to discharge instructions.

37. Ms. Williams began experiencing complications soon after leaving Defendants' facility.

38. She returned for post-surgical follow up with Defendants on July 8, 2014, complaining of bloody drainage from her right breast. Again, Defendants failed to provide a qualified sign language interpreter, – neither in-person nor by video relay. Instead, Defendants again attempted to rely on Ms. William's sister-

in-law who is not fluent in sign language to interpret. Both Ms. Williams and her sister-in-law objected to the failure to provide interpreters. Without a qualified interpreter, communication was not effective.

39.    In the days that followed, Ms. Williams became increasingly ill. She began experiencing nausea, pain, and aches and the bloody drainage continued from her right breast. She returned for a scheduled appointment with Defendants on July 17, 2014, seeking answers about the blood draining out of her breast and her increasingly poor health. Again, Defendants failed to provide a qualified sign language interpreter  – neither in-person nor video relay - despite Ms. Williams' requests. As a result, communication was not effective, and Ms. Williams was unable to fully explain her symptoms and ask questions about what was happening to her.

40.    On July 29, 2014, Ms. William returned for a scheduled follow up appointment and again Defendants failed to provide interpreter services despite Ms. Williams' repeated requests. Communication was not effective with the result that Ms. William was able to provide and receive only limited information about her post-surgical symptoms and complications.

41.    On August 26, 2014, Ms. Williams returned for a follow-up appointment wanting and needing answers from the Defendants about what had happened to result in the bloody drainage and breast scarring. Again, Defendants

9

failed to provide a qualified sign language interpreter – in-person or video relay. Ms. Williams was unable to ask important questions and obtain the medical information she desperately wanted and needed.

42. Not only did Defendants deny Ms. Williams ability to communicate fully in these critical appointments, during one of her follow up appointments, Dr. Chang mocked Ms. Williams, poking her bloody breast and making derogatory comments.

43. Ms. Williams was forced to seek medical care elsewhere. She sought medical care from John Hopkins where she requested and was provided with qualified, in-person, sign language interpreters.

44. Ms. Williams experienced humiliation, embarrassment, frustration, denial of access, and fear as the direct result of Defendants' denial of her federally protected rights.

45. Defendants' conduct was intentional and shocking given the intimate nature of the evaluation, surgery, and follow-up care involved.

## COUNT I
### SECTION 504 OF THE R EHABILITATION ACT

46. Plaintiff repeats and re-alleges paragraphs 1 through 45 in support of this claim.

47.     Plaintiff is substantially limited in the major life activities of hearing and speaking and is therefore an individual with a disability pursuant Section 504 of the Rehabilitation Act.

48.     Ms. Williams is a member of the public entitled to seek medical care from Defendants. She was a patient of the Defendants, and she is therefore a qualified individual with a disability.

49.     Defendants are recipients of substantial amounts of federal financial assistance including payments from Medicare and Medicaid. As a condition of receiving federal financial assistance, Defendants have committed ensuring effective communication with individuals whoa re deaf and hard of hearing.

50.     Section 504 provides that "No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

51.     Pursuant to Section 504, a program or activity refers to an organization, such as Defendants, "…principally engaged in the provision of …. healthcare" any part of which receives federal financial assistance.

52.      Defendants have intentionally discriminated against Ms. Williams by denying her repeated requests for interpreters and failing to provide effective communication.

11

53.     Defendants had notice that Ms. Williams was deaf, that she needed and was requesting interpreters, and that the law required them to provide interpreters, but Defendants failed and refused to provide interpreters.

54.     As the result of Defendants' discriminatory acts, Ms. Williams was denied a meaningful opportunity to participate in her own care and treatment and was subject to unnecessary humiliation and embarrassment.

## JURY DEMAND

55.     Ms. Williams demands trial by jury.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide all just and appropriate relief including but not limited to:

    a.  Declare that Defendants' discriminatory conduct violated Section 504 of the Rehabilitation Act;

    b.  Award damages;

    c.  Award reasonable costs and attorneys' fees; and

    d.  Award any and all other relief that may be necessary and appropriate.

Respectfully submitted,

/s/ Mary C. Vargas
Mary C. Vargas, Bar No. 14135
Michael S. Stein
Stein & Vargas, LLP

5100 Buckeystown Pike, Suite 250
Frederick, MD 21704
Mary.Vargas@steinvargas.com
T: 240-793-3185
F: 888-778-4620


Marc P. Charmatz, Bar No. 09358
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Marc.charmatz@nad.org
T: 301-587-7732

13